UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY W. DETTERMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | No. 4:16 CV 1341 CDP |

## **MEMORANDUM AND ORDER**

Plaintiff Timothy W. Detterman brings this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision finding his disability to have ended March 15, 2014. Because the basis for the Commissioner's final decision is unclear, I cannot say that it is supported by substantial evidence on the record as a whole. I will therefore reverse the decision and remand the matter to the Commissioner for further proceedings.

## **Procedural History**

On February 4, 2009, the Social Security Administration (SSA) awarded Detterman benefits on his application for disability insurance benefits, finding him disabled as of August 30, 2008, because of schizophrenic disorder-paranoid and

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

other functional psychotic disorder. On March 4, 2014, during periodic review for continued entitlement to benefits, the SSA determined that Detterman achieved medical improvement to a degree that enabled him to perform work. (Tr. 99-102.) An SSA hearing officer thereafter found that Detterman was no longer disabled as of March 2014 (Tr. 122-33), and Detterman's receipt of benefits ceased June 30, 2014 (Tr. 83-86).

At Detterman's request, a hearing was held before an Administrative Law Judge (ALJ) on December 11, 2014, at which Detterman and his mother testified. (Tr. 63-82.) A vocational expert later responded to written interrogatories put to her by the ALJ. (Tr. 300-04.) On May 29, 2015, the ALJ issued a decision finding that as of March 15, 2014, Detterman could perform work as it existed in the national economy and thus was no longer disabled. (Tr. 45-56.) On July 11, 2016, the Appeals Council denied Detterman's request for review of the ALJ's decision. (Tr. 1–5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Detterman contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Detterman specifically argues that the ALJ erred by failing to include mental limitations in the residual functional capacity (RFC) assessment, especially given that the ALJ credited medical opinion evidence that Detterman experienced such

limitations. Detterman also contends that the vocational expert's interrogatory answers conflict with the *Dictionary of Occupational Titles* (DOT) and that the ALJ erred by failing to identify this conflict and resolve it. Detterman asks that I reverse the Commissioner's final decision and order reinstatement of his disability benefits, or that the matter be remanded for further proceedings. For the reasons that follow, I will remand the matter to the Commissioner for further proceedings.

**Medical Records and Other Evidence Before the ALJ**

At the time of the hearing in December 2014, Detterman was thirty-three years old and had been living with his mother, who is his legal guardian, since July 2013. (Tr. 80.) Immediately prior to moving in with his mother, Detterman spent four years in hospitals and residential care facilities for treatment of schizophrenia. (Tr. 77.) He currently works part-time as a dishwasher. (Tr. 70.)

With respect to the medical records and other evidence of record, I adopt Detterman's recitation of facts set forth in his Statement of Uncontroverted Material Facts (ECF #15-1) to the extent they are admitted by the Commissioner (ECF #20-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #20-2), which Detterman admits in their entirety. Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties'

arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, Detterman must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Once a claimant becomes entitled to disability benefits, the Commissioner must periodically review the claimant's continued entitlement. 20 C.F.R. § 404.1594(a). If there has been a medical improvement in a claimant's impairments and such improvement relates to the claimant's ability to work, the disability will be found to have ended if the claimant is able to engage in substantial gainful

activity. 20 C.F.R. § 404.1594(a), (b)(3). The claimant has a "continuing burden" to demonstrate that he is disabled. *Nelson v. Sullivan,* 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam) (citing *Mathews v. Eldridge,* 424 U.S. 319, 336 (1976)). "[N]o inference is to be drawn from the fact that the individual has previously been granted benefits." *Id.* (citing 42 U.S.C. § 423(f)).

If the Commissioner seeks to end disability benefits because of an improvement in the claimant's medical condition, she must demonstrate that "the conditions which previously rendered the claimant disabled have ameliorated, and the improvement in the physical condition is related to claimant's ability to work." *Nelson,* 946 F.2d at 1315 (citing 20 C.F.R. § 404.1594(b)(2)-(5)). "Medical improvement" is any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. § 404.1594(b)(1). In determining medical improvement, the severity of the claimant's current condition is compared with the severity of his condition as of the date he was last found to be disabled. 20 C.F.R. § 404.1594(b)(7). Once it has been established that there has been a medical improvement, the Commissioner must determine the claimant's RFC and whether, with this RFC, he can perform his past work. 20 C.F.R. § 404.1594(f)(7). If he can, the Commissioner will find claimant's disability to have ended. *Id.* If the claimant cannot engage in his past relevant work, the

Commissioner must consider whether the claimant can perform other jobs with his current RFC. 20 C.F.R. § 404.1594(f)(8). If he cannot, the Commissioner will find claimant's disability to continue. *Id.*

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   ALJ's Decision

In her written decision here, the ALJ determined that February 4, 2009, was the date on which the most recent favorable decision was entered finding Detterman to be disabled. The ALJ noted that, at that time, Detterman's medically determinable impairments of schizophrenic disorder-paranoid and other functional psychotic disorder met Listing 12.03 of the Listings of Impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that Detterman had not engaged in substantial gainful activity from that time through March 15, 2014. The ALJ found that Detterman continued to have severe impairments on March 15, 2014, and specifically schizophrenic disorder and cervical dystonia, but that he did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ therefore found that medical improvement occurred for Detterman as of March 15, 2014, and that this improvement related to his ability to work.

Considering Detterman's impairments that were present on March 15, 2014, the ALJ found Detterman to have the RFC to perform medium work but with additional limits to

> lift up to 50 pounds frequently and 20 pounds occasionally. He can carry up to 20 pounds occasionally, and carry 10 pounds frequently. He can sit for 2 hours at a time and 4 hours in a workday, stand for 1 hour at a time and 2 hours in a workday, and walk for 1 hour at a time and 2 hours in a workday. He can frequently reach in all directions, handle, finger, feel, push, and pull with both upper extremities. He

> can frequently operate foot controls with both lower extremities. He can frequently climb stairs and ramps, and occasionally climb ladders and scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can have frequent exposure to unprotected heights, humidity and wetness, dust, odors, fumes, and other pulmonary irritants. He can have occasional exposure to moving mechanical parts, extreme heat, and extreme cold. He can occasionally operate a motor vehicle.

(Tr. 49-50). The RFC did not include any mental limitations. The ALJ found Detterman unable to perform his past relevant work as a dishwasher. Considering Detterman's age, education, work experience, and RFC as of March 15, 2014, the ALJ found vocational expert opinion to support a finding that Detterman could perform other work as it is performed in significant numbers in the national economy, and specifically, unskilled work as a mail clerk, marker II, and routing clerk. The ALJ therefore found that Detterman's disability ended as of March 15, 2014. (Tr. 55-56.)

C.  Mental Limitations in RFC

Detterman claims that the ALJ improperly failed to include any mental limitations in the RFC, despite giving significant weight to medical expert opinions that Detterman experienced such limitations. I agree with Detterman that the ALJ's decision is inconsistent in this regard. Because the ALJ's decision is unclear as to why she did not include any mental limitations in the RFC, I must remand the matter to the Commissioner for further proceedings.

In her written decision, the ALJ underwent the sequential analysis for

determining continuing disability. In reviewing the severity of Detterman's impairments as of March 15, 2014, the ALJ considered Detterman's schizoaffective disorder to be severe, finding that the evidence showed it to have "more than a minimal harmful effect on the claimant's ability to do basic work activities." (Tr. 49.) When assessing Detterman's RFC, the ALJ summarized Detterman's and his mother's hearing testimony, wherein they both testified that he was taking medication for his mental impairment and was doing better. (Tr. 52.) The ALJ also summarized the relevant medical evidence from Detterman's treating psychiatrist, Dr. Eduardo Garcia-Ferrer, who – from July 2013 through March 2014 – observed that Detterman was doing well and exhibited normal behaviors with no adverse symptoms or reactions to medications. (Tr. 52-53.) Indeed, in a note dated March 22, 2014, Dr. Garcia-Ferrer reported that Detterman's schizophrenia was stable, with no psychosis. (Tr. 307.)

The ALJ then turned to the medical opinion evidence of record and determined to accord "significant weight" to mental RFC assessments completed by Drs. Joan Singer and James Morgan, psychological consultants with disability determinations, finding that these consultants had reviewed Detterman's medical file and had reached conclusions "largely consistent with the bulk of the evidence in the longitudinal file." (Tr. 54.) Both Drs. Singer and Morgan opined that Detterman experienced moderate limitations in numerous areas of mental

functioning, but the ALJ included no mental limitations in the RFC.[2] Nor did the ALJ provide any explanation as to why she may have weighed certain opinions from these experts differently than other of their opinions. While I acknowledge that an ALJ need not credit the entirety of a medical opinion or directly correlate a medical opinion to a claimant's RFC, *see Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011), I nevertheless find it incongruent for an ALJ to accord significant weight to two medical opinions that each contain significant mental limitations and then formulate an RFC that contains no mental limitations at all with no explanation as to why. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).

The Commissioner contends that, in evaluating Detterman's RFC, it was the consultants' overall conclusion that Detterman's disability had ceased that the ALJ agreed with and gave weight to. This argument is flawed in two respects. First, the ALJ did not state this in her decision, and, as a reviewing court, I may not uphold the ALJ's decision based on reasons not articulated in the decision. *See*

---

[2] Dr. Singer opined that Detterman was moderately limited in his ability to understand, remember, and carry out detailed instructions; and in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. 475-76.) Dr. Morgan opined that Detterman was moderately limited in his ability to understand, remember, and carry out detailed instructions; and in his ability to maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. (Tr. 330-31.)

*Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990).  In addition, the ultimate determination of disability is for the Commissioner to make.  Whether a claimant is or is not disabled is a matter reserved to the Commissioner and is not considered to be a medical opinion entitled to weight otherwise accorded to medical opinion evidence.  20 C.F.R. § 404.1527(d).

The Commissioner also argues that the ALJ limited Detterman to unskilled work, and that this limitation adequately accounted for the medical experts' opined limitations.  This argument is likewise flawed.  First of all, neither the RFC nor the hypothetical question posed to the vocational expert contained any limitation to unskilled work.  (*See* Tr. 49-50, 301.)  After giving her opinion regarding whether a person with Detterman's articulated RFC could perform his past work, the vocational expert was asked whether such a person could perform any unskilled work.  (Tr. 301-02.)  The Commissioner avers that this effectively placed a limitation to unskilled work into the RFC assessment.  I disagree.  But even if it did, a general limitation to "unskilled work" is insufficient to capture the concrete consequences of Detterman's specific mental limitations, as opined by the medical experts and accorded significant weight by the ALJ.  *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).  *See also Vincent v. Apfel*, 264 F.3d 767, 769-70 (8th Cir. 2001); *Pfitzner v. Apfel*, 169 F.3d 566, 568-69 (8th Cir. 1999).

Finally, I reject the Commissioner's argument that by limiting Detterman to

unskilled work, the ALJ effectively incorporated into the RFC the definition of unskilled work as set out in Social Security Ruling 85-15, thereby capturing the mental limitations Detterman argues the ALJ should have included. According to the Ruling, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985). As detailed above, the medical experts included numerous mental limitations in their RFC assessments, including a specific limitation in Detterman's ability to respond appropriately to changes in the work setting. This limited ability alone may reduce a claimant's ability to perform work. *See* 20 C.F.R. § 404.1545(c). And with persons suffering from mental illness, such as Detterman, SSR 85-15 instructs that "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." 1985 WL 56857, at *6. For such persons, the performance of an unskilled job may be as difficult as an objectively more demanding job. *Id.* Therefore, "[a]ny impairment-related limitations created by an individual's response to the demands of work . . . must be reflected in the RFC assessment." *Id.* The ALJ failed to do this here. And, if the ALJ felt that no mental RFC limitations were warranted in the circumstances of this case, she did not provide

any explanation as to why.

Accordingly, I will remand this matter to the Commissioner for clarification. The ALJ should explain how it is possible to give significant weight to medical expert opinions that contain numerous significant mental limitations but pose a hypothetical to a vocational expert that includes no mental limitations. *McCadney*, 519 F.3d at 767. The ALJ is also free to reevaluate Detterman's mental limitations and the extent to which they and his severe mental illness affect his ability to perform the demands of work – especially in combination with his physical limitations – and to pose to the vocational expert a completely new hypothetical based on an RFC that includes specific mental limitations. *See id.*

Because the matter will be remanded on this basis, I will not address Detterman's other argument regarding whether the vocational expert's opinion conflicted with the DOT.

## Conclusion

For the reasons set forth above, I find that the final decision of the Commissioner is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that decision of the Commissioner of Social Security is **REVERSED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2017.